427 P.2d 910

H..Samuel HACKIN, Petitioner,

v.

STATE of Arizona (L. C. "Cal" Boies, Sheriff of Maricopa County), Respondent.

No. 8990.

Supreme Court of Arizona,
In Banc.
May 17, 1967.

Amelia D. Lewis, Sun City, for petitioner.

Robert K. Corbin, Maricopa County Atty., Irwin Harris, Deputy County Atty., for respondent.

PER CURIAM.

Defendant H. Samuel Hackin, was charged in the Justice Court of West Phoenix of violating A.R.S. § 32–261, prohibiting any person from practicing law in

this state unless he is an active member of the state bar. A jury found him guilty of the charge. Defendant then appealed to the Superior Court of Maricopa County where his conviction was upheld and he was sentenced to fifteen (15) days in the Maricopa County jail. The matter comes to this court on a petition for a writ of habeas corpus in accordance with A.R.S. § 13–2001.

On October 24, 1966 the defendant represented one Jasper Winnegar in a hearing upon a petition for habeas corpus, conducted in the Superior Court of Maricopa County. The defendant is not now, nor was he then, a licensed attorney. Defendant was advised at the time by a deputy county attorney that should he insist on representing Winnegar in court he would be subject to prosecution for violation of a state law, i. e. A.R.S. § 32–261, prohibiting the illegal practice of law. However, because the court refused upon defendant's request to appoint counsel for Winnegar, the defendant chose to conduct the hearing on Winnegar's behalf. Thereafter the charges for which he stands convicted were brought against defendant.

A.R.S. § 32–261 provides:

"A. No person shall practice law in this state unless he is an active member of the state bar in good standing as defined in this chapter.

"B. A person who, not being an active member of the state bar, or who after he has been disbarred, or while suspended from membership in the state bar, practices law, is guilty of a misdemeanor."

The prohibition of this provision is, however, subject to the following limitation set out in A.R.S. § 13–2002:

"Application for the writ [writ of habeas corpus, A.R.S. § 13–2001] shall be made by verified petition, signed *either* by the party for whose relief it is intended *or* by some person in his behalf * * *." (Emphasis added.)

The state concedes that this statute allows one not an attorney to file an application for a writ of habeas corpus on behalf of another. It would concede also, perhaps, that the filing of such verified petition could properly be considered the "practice [of] law," within A.R.S. § 32–261. What the state does not concede, however, is that A.R.S. § 13–2002 should be extended to permit a nonlawyer, other than the petitioner who has filed an application with the court, to then go into open court and argue the merits of the application. It is with this primary question that we must therefore deal.

Much has been written about the writ of habeas corpus. It is considered by some to be "the most important human right in the constitution". 32 Boston University Law Review, 143 (1952). Its roots trace further back than the Magna Charta, and our founding fathers deemed it worthy of constitutional protection. United States Constitution, Article 1, § 9. The writ of habeas corpus is held sacred because it is a means by which a person can penetrate confining prison walls in order to protect his personal liberty. It demands that the prisoner be brought before the courts so that the courts may determine whether his imprisonment is authorized by law. By so doing, the writ prevents any form of illegal imprisonment, thus safeguarding against arbitrary restrictions on personal liberty reminiscent of the Dark Ages.

The provision embodied in A.R.S. § 13–2002 permitting any person acting on behalf of the prisoner to file an application for a writ of habeas corpus further safeguards the protection that the writ was designed to provide. It is a practical realization that one confined to a cell, without ready access to a lawyer, often must depend on his family or friends to have "his body brought before the court" (i. e. "habeas corpus") to determine the legality of his incarceration.

Once before the court, however, the purpose of the writ and the statute has been served. No longer is it necessary for

the prisoner's family or friends to act in his behalf. The matter is then in the hands of the court which is well acquainted with the law, and whose duty it is to determine the legality of the petitioner's detention. See A.R.S. § 13–2010. It is true that a lawyer to represent the petitioner may well be helpful to the court in its legal consideration of the matter, but this is due to a lawyer's special training and knowledge of the law. He can provide a service which a layman cannot, the very reason why a person is required to be licensed before he is permitted to practice law. Also, the legal knowledge needed to represent a man in court is not needed in preparing an application for habeas corpus which "properly contains allegations of fact alone, and * * * legal arguments are not a proper part thereof." State of Oregon ex rel. Sherwood v. Gladden, 240 F.2d 910 (9th Circuit); see Johnson v. Avery, D.C., 252 F.Supp. 783. We are not prepared, therefore, to say that a layman is any more able to represent a person in a habeas corpus proceeding than he is in any other legal proceeding. A layman has done his deed by assisting the petitioner to get before the court.

That we have held in Palmer v. State, 99 Ariz. 93, 407 P.2d 64, that an indigent is not entitled to court appointed counsel in habeas corpus proceedings, does not alter our view of this matter. It in no way affects our determination that one layman is unsuited to represent another layman in a legal proceeding. We take the opportunity to note here, however, that our decision in Palmer does not in any way deny the court's power to appoint counsel, and to assert that this power should be exercised freely, taking into account the Public Defender and Legal Aid programs that have been established in our state.

Whether counsel should be appointed as a matter of course in habeas corpus proceedings, however, is not in issue here. We limit ourselves to the question of whether defendant's acts in representing Jasper Winnegar can be justified in the face of A.R.S. § 32–261. We hold that they cannot. The "exception" provided in A.R.S. § 13–2002 serves a specific purpose, and that purpose is fulfilled once the incarcerated prisoner is brought before the court.

Defendant next contends that his right to freedom of speech under the First Amendment of the United States Constitution was violated by reason of his conviction in the present cause. This contention is without merit. The practice of law is above that of a mere privilege. It cannot be treated as a matter of grace or favor. But it may be granted only upon fulfillment of certain rigid qualifications established by this court. Application of Levine, 97 Ariz. 88, 397 P.2d 205. The defendant has not fulfilled these qualifications and he is not therefore entitled to exercise the privilege bestowed upon those who have.

Defendant further challenges the constitutionality of A.R.S. § 32–261, charging that its terms are too vague and indefinite to meet constitutional standards in this regard. We disagree. In order for a criminal statute to meet the dictates of due process, its terms must be sufficiently definite and certain to inform persons what activities they may not lawfully pursue. State v. Berry, 101 Ariz. 310, 419 P.2d 337; State v. Locks, 97 Ariz. 148, 397 P.2d 949. A.R.S. § 32–261 prohibits the "practice [of] law" unless a person is a member of the state bar in good standing. In the case of State Bar of Arizona v. Arizona Land Title and Trust Co., 90 Ariz. 76, 366 P.2d 1, we devoted much attention to the definition of the practice of law. Although the activities enumerated therein were admittedly not exhaustive, they were consonant with our position that "the practice of law" is normally considered to include "those acts, whether performed in court or in a law office, which lawyers customarily have carried on from day to day through the centuries * * *". State Bar v. Arizona v. Arizona Land and Title

Trust Co., supra at p. 87, 366 P.2d at p. 9.[1] It cannot be disputed that one who represents another in court, be he an indigent or not, is, under our adversary process, going to the very core of the practice of law, a fact with which even the most uninformed persons are well aware. See Arizona Land and Title Trust Co., supra. Thus the outer boundaries of the term "practice of law" are not here in question, and we can only conclude that the statute here in question was sufficiently definite to inform the defendant that his act of representing Jasper Winnegar was in violation of the law.

Writ denied.

1. Statutory terms are to be given their ordinary meaning unless it appears from the context or otherwise that a different sense was intended. State v. Curry, **97** Ariz. 191, 398 P.2d 899.